1

O

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11

| | |
|---|---|
| **JESSICA J. GASSAWAY,** ) | **NO. CV 14-03615-KLS** |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OPINION** |
| **v.** ) | **AND ORDER** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social** ) | |
| **Security,** ) | |
| **Defendant.** ) | |

12

13

14

15

16

17

18

19     On May 19, 2014, plaintiff Jessica J. Gassaway ("Plaintiff") filed a Complaint seeking

20     review of the denial of her application for Supplemental Security Income ("SSI") and Social

21     Security Disability Insurance Benefits ("DIB"). (ECF No. 2.) On May, 15, 2015, the parties filed

22     a Joint Stipulation ("Joint Stip."), in which Plaintiff seeks an order reversing the Commissioner's

23     decision and remanding this case for further administrative proceedings; and the Commissioner

24     requests that her decision be affirmed or, alternatively, remanded for further administrative

25     proceedings. (Joint Stip. at 29-30.) On August 12 and September 14, 2015, the parties

26     consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States

27     _____

28

Magistrate Judge.   (ECF Nos. 26, 28.)  The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On November 10, 2010  and July 19, 2011, Plaintiff[1] protectively filed her applications for DIB and SSI, respectively.  (Administrative Record ("A.R.") 65-81.)  Plaintiff claims to have been disabled since November 1, 1990, due to:  back pain; history of anorexia nervosa, in remission; borderline intellectual functioning; and depressive disorder, not otherwise specified.  (*Id.* 17-18). Plaintiff previously worked in two grocery stores, where she bagged groceries, pushed shopping carts, and helped customers carry groceries to their cars.  (*Id.* 117-18.)  Plaintiff also worked at two daycare centers, where she changed diapers, made snacks, and supervised children.  (*Id.* 119-20.)  Plaintiff also worked in a retail store, where she unloaded boxes and compressed empty boxes.  (*Id.* 121.)  Plaintiff became eligible for services through the Regional Center of Orange County on 8/18/99 due to her mental impairment. (A.R. 498.) Plaintiff has never lived independently.  (A.R. 640.)

After the Commissioner denied Plaintiff's claims initially, Plaintiff requested a hearing.  (A.R. 14.)  Administrative Law Judge James D. Goodman (the "ALJ") dismissed Plaintiff's request for a hearing because "there was no indication in the record that a reconsideration determination had been made in the case." (*Id.*)  However, on March 28, 2012 the ALJ vacated the dismissal "based on new evidence that this is a 'prototype case,' and the first level of appeal is an Administrative Law Judge hearing." (*Id.*)  On July 25, 2012, Plaintiff, who was represented by an attorney, appeared and testified at a hearing before the ALJ. (*Id.*)  On December 20, 2012 the ALJ denied Plaintiff's claim (*id.* 26), and the Appeals Council subsequently denied Plaintiff's request for review

---

[1]Plaintiff was born on April 3, 1987, (Administrative Record 498) and, therefore, was 23 and 24 respectively at the time of her applications.

of the ALJ's decision (*id.* 6).  On May 19, 2014, Plaintiff filed her complaint in this action seeking review of the Commissioner  f Social Security's denial of Plaintiff's application for benefits. (ECF No. 3.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five-step sequential evaluation required under 20 C.F.R. §§ 404.1520 and 416.920 for determining whether a claimant is or is not disabled, the ALJ found in step one that Plaintiff has not engaged in substantial gainful activity since January 1, 2008, the first date insured.  (A.R. 17.)  At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe"or a combination of impairments that is "severe".  Here, the ALJ determined that Plaintiff "has a severe impairment" based on the following conditions: "history of anorexia nervosa, in remission; borderline intellectual functioning; and depressive disorder, not otherwise specified." (*Id.*)  At step three, the ALJ concluded  that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  (A.R. 18)

In step four, the ALJ determined  that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work, except:

"She may not perform complex technical work, but she may perform simple, routine, and repetitive work with occasional contact with co-workers, supervisors, and the general public.  She may frequently focus and use independent judgment in the performance of work tasks.  She also may perform work at a stress level of five on a scale of one to ten, where one is described as a night dishwasher as this occupation exists in the national economy, and ten is described as the work of an air traffic controller as this occupation exists in the national economy."

(A.R. 20.)

Based on Plaintiff's age, education, work experience, and RFC, as well as the testimony of the vocational expert (the "VE"), the ALJ found at step five, that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including the jobs of cleaner (commercial and industrial), housecleaner, and packager.  (A.R. 25.)

Based on these findings, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since January 21, 2008, the date her application was filed. (A.R. 15, 25.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405 (g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (*Id.*) (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

This Court cannot substitute its discretion for that of the Commissioner, but the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988); *see also Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

1    1995).

2

3    The Court will uphold the Commissioner's decision when the evidence is susceptible to

4    more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

5    However, the Court may review only the reasons stated by the ALJ in his decision "and may not

6    affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett*,

7    340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless

8    error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential

9    to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th

10   Cir. 2006) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see*

11   *also Burch*, 400 F.3d at 679.

12

13                                          **DISCUSSION**

14

15   Plaintiff contends the ALJ's determination is legally flawed in three aspects.  (Joint Stip. at

16   3).  First, Plaintiff alleges the ALJ erred in finding that Plaintiff did not meet or equal the

17   conditions for an impairment as set forth in the regulations.  (*See* Joint Stip. at 2.)  Second,

18   Plaintiff alleges the ALJ erred by improperly discounting the testimony of Plaintiff's father.[2]  (*Id.*)

19   Finally, Plaintiff alleges the ALJ presented an incomplete hypothetical to the VE, that did not

20   include additional mental and physical limitations testified to by Plaintiff's parents and treating

21   physician.  (*Id.* 27-28.)

22

23   **I.     The ALJ 's Finding That Plaintiff's Severe Impairment Does Not Meet Or**

24          **Equal Listing 12.05C Is Not Supported by Substantial Evidence**.

25

26          A.     The Standard

27   _____

28        [2]  Plaintiff's mother did not testify at the hearing, but submitted comments in an Adult
     Function Report.  (A.R. 144.)

At step three of the sequential evaluation process, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in the Appendix to the Code of Federal Regulations.[3] 20 C.F.R. §§ 416.920(d); 404.1520(d). Conditions set forth in the Listing of Impairments ("Listings") are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform h[er] past relevant work or any other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995). The Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). If a claimant shows that her impairments meet or equal a Listing, she will be found presumptively disabled. 20 C.F.R. §§ 416.925-416.926, 404.1525-404.1526; *see Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1221-22 (9th Cir. 2010).

The claimant bears the burden of establishing a prima facie case of disability under the Listings. *See Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). To "meet" a listed impairment, the claimant must establish that her condition satisfies each element of the listed impairment. *See Zebley*, 493 U.S. at 530; *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). To "equal" a listed impairment, the Plaintiff's "symptoms, signs, and laboratory findings" must at least equal each element of the listed impairment, in severity and duration. 20 C.F.R. §§ 404.1529. If a claimant meets the requirements of Listing 12.05, she must be found disabled without regard to her age, education, or previous work experience. 20 C.F.R. §   416.920(d).

Here, Plaintiff contends the ALJ erred in refusing to find that Plaintiff's mental impairments met the requirements under 12.05 such as to support a finding that Plaintiff is disabled. (Joint Stip. At 6-8.) Plaintiff contends that she meets the requirements of paragraph C, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental

---

[3] The Appendix containing the listed impairments appears in the Regulations at 20 C.F.R., Pt 404, Subpt. P, App. 1.

impairment imposing an additional and significant work-related limitation of function[.]" (Joint Stip. at 4); *see also* 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.05.

While Plaintiff bears the burden of proving that she had an impairment or combination of impairments that meet or equal the criteria of a listed impairment, an ALJ must still adequately discuss and evaluate the evidence before concluding that Plaintiff's impairments fail to meet or equal a listing. *Marcia v. Sullivan* , 900 F. 2d 172, 176 (9th Cir. 1990) ("in determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."). Remand is appropriate where an ALJ fails to adequately consider a listing that plausibly applies to a plaintiff's case. *See Lewis v. Aspfel*, 236 F.3d 503, at 514.

Based on a review of the record as a whole and applicable law, the Court finds the ALJ's conclusion is not supported by substantial evidence.

B.   Medical Evidence

On April 19, 2011, the consultative psychologist Charlene K. Krieg, Ph.D., assessed Plaintiff with, *inter alia*, a full scale IQ of 70 on the Wechsler Adult Intelligence Scale. (A.R. 276.) On October, 10, 2011, the treating psychologist Robert L. Fitzgerald, Psy.D., assessed Plaintiff with, *inter alia*, a verbal IQ score of 67 and a full scale IQ of 59 on the Wechsler Abbreviated Scale of Intelligence. (*Id.* 502.) Dr. Fitzgerald also opined:

"Tasks requiring eye-hand coordination using the small muscles of the fingers, hands and arms will be extremely difficult to impossible for [Plaintiff];" "tasks involving talking and other forms of expression will be extremely difficult to impossible for her;" "eating and meal preparation skills are very limited to negligible;" "toileting skills are very limited;" and "tasks related to getting around [t]he home, neighborhood, or traveling in the community

7

1    will be extremely difficult to impossible for her."

2

3    (A.R. 504.)

4

5        C.    The ALJ's Decision

6

7        The ALJ found that Plaintiff met the first criteria of 12.05C, *i.e.* her impairments began

8    before age 22; but that Plaintiff had neither a valid IQ score nor a physical or other mental

9    impairment imposing an additional and significant work-related limitation of function.  Specifically,

10   the ALJ wrote:

11

12       "In terms of the requirements in [12.05C], they are not met because the [Plaintiff] does

13       not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or

14       other mental impairment imposing an additional and significant work-related limitation of

15       function."

16

17   (A.R. 20.)    The  ALJ acknowledged Dr. Krieg's and Dr. Fitzgerald's opinions, but found that

18   Plaintiff did not meet the IQ criteria of listing 12.05C -- that is, that Plaintiff did not have a verbal,

19   performance, or full scale IQ score of 60 through 70.  However, Dr. Krieg assessed Plaintiff with

20   a full scale IQ score of 70, and Dr. Fitzgerald assessed Plaintiff with a full scale IQ of 59, thus  the

21   record shows that Dr. Fitzgerald and Dr. Krieg assessed Plaintiff with full scale IQ scores of 70 or

22   lower. (A.R. 20.)  Moreover the ALJ decision acknowledges that consultative psychologist, Dr.

23   Krieg, found "that the claimant's overall cognitive ability falls <u>within the borderline range of</u>

24   <u>intellectual functioning</u>."  (A.R. 20 (emphasis added).)  Thus, the ALJ's conclusion that Plaintiff

25   does not have a valid IQ score of 60 through 70 is not supported by substantial evidence.

26

27       D.    <u>The ALJ Also Erred By Failing To List Specific Reasons For Discounting</u>

28       <u>Plaintiff's Anorexia And Depressive Disorder As Additional Impairments.</u>

The ALJ also found that Plaintiff does not possess a physical or other mental impairment imposing an additional and significant work-related limitation of function. Specifically, the ALJ found that: "[Plaintiff's] history of anorexia and depressive disorder, do not pose additional and significant work-related limitation of function, in and of themselves." (A.R. 20.)

Listing 12.05C requires that Plaintiff have "a physical or other mental impairment imposing an additional and significant work related limitation of functioning." 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.05(C). "[A]n impairment imposes a significant work-related limitation of function when its effect on a [Plaintiff]'s ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987). This requirement is met when the Plaintiff has an additional impairment that is "severe" under 20 C.F.R. § 416.920(c) -- that is, when the Plaintiff has an additional impairment that the ALJ found was "severe" at "step 2" of the sequential analysis. 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.00(A). "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citations and internal quotation marks omitted). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is *clearly established* by medical evidence." (*Id.*) (emphasis added) (citations and internal quotation marks omitted).

In this case, the ALJ determined that Plaintiff's other conditions, including her history of anorexia and well documented evidence of depressive disorder, were not additional impairments in and of themselves," and do not constitute severe impairments under 20 C.F.R. § 416.920(c). (A.R. 17.)    The ALJ based his finding that these other impairments were non-severe on the opinion of Dr. Janssen, the State Agency medical consultant. (*Id.* 17-18.) However, Dr. Janssen indicated that Plaintiff's impairments *were* severe, and an RFC assessment was necessary. (*See id.* 295.) Further, Dr. Janssen indicated that Plaintiff was moderately limited in the following areas:  activities of daily living; ability to maintain social functioning; and ability to maintain

concentration, persistence, or pace. (*Id.* 305.) Accordingly, the ALJ's determination that Plaintiff's depression and history of anorexia were non-severe was refuted, rather than supported, by the medical evidence the ALJ cited. *See Webb*, 433 F.3d at 686.

Furthermore, in finding that Plaintiff's depression was non-severe, the ALJ disregarded the treating notes of Plaintiff's treating physician, Dr. Nida Nicasio, who chronicled Plaintiff's history of depression and its impact on her daily life since 2005. For example, in her notes from November 19, 2008, Dr. Nicasio noted that Plaintiff weighed 104lbs, forgot to take her medications, and felt sad. (A.R. 345.) On April 29, 2009, Dr. Nicasio noted that Plaintiff felt depressed, was "very tearful," failed her driving test, was "getting paranoid," was losing weight, and felt that she had no freedom. (*Id.* 345.) On July 12, 2009, Dr. Nicasio noted that Plaintiff felt depressed. (*Id.* 344.) On August 18, 2009, Dr. Nicasio noted that Plaintiff could not sleep, felt "sad about not having friends," and "looked very gaunt." (*Id.* 343.) On September 8, 2009, Dr. Nicasio noted that Plaintiff "cannot sleep alone," was depressed, was more argumentative, wore the same clothes daily, refused to shower, and stopped going to work. (*Id.* 341.) On January 5, 2010, Dr. Nicasio noted that Plaintiff became more depressed, stopped taking her medication, and weighed 89lbs. (*Id.* 334.) On March 11, 2010, Dr. Nicasio noted that Plaintiff weighed only 95lbs, and felt as though she had "no goals." (*Id.* 333.) On June 30, 2011, Dr. Nicasio noted that Plaintiff was "very tearful," and weighed only 104lbs. (*Id.* 330.) In a report from August 9, 2010, Dr. Nicasio and Dr. Fitzgerald indicated that Plaintiff suffered from:

> "depression;" "appetite disturbance;" "emotional withdrawal or isolation;" "decreased energy;" "feelings of guilt or worthlessness;" "difficulty concentrating or thinking;" "oddities of speech;" "persistent disturbance of mood;" and "recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress."

(A.R. 356-57.) In her 11/29/11 progress notes, Dr. Nicasio indicated that Plaintiff was depressed, had to force herself to eat, and quoted Plaintiff saying "I don't have friends." (*Id.* 327.)

1

2    When a treating physician's opinion is not contradicted by another physician, it may be

3    rejected only for "clear and convincing" reasons that are supported by substantial evidence.

4    *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014); *Lester*, 81 F.3d at 830.  When it is

5    contradicted by another doctor's opinion, a treating or examining physician's opinion may only

6    be rejected if, after considering the factors set out in 20 C.F.R. § 404.1527(c) and § 416.927(c)

7    for evaluating medical opinions, the ALJ articulates "specific and legitimate" reasons supported

8    by substantial evidence in the record.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014);

9    *Orn*, 495 F.3d at 632.  This is so because, even when contradicted, a treating or examining

10   physician's opinion is still owed deference and will often be "entitled to the greatest weight . . .

11   even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012. "[I]t follows

12   even more strongly that an ALJ cannot in its decision totally ignore a treating doctor and his or

13   her notes, without even mentioning them." *Marsh v. Colvin*, __ F.3d __, 2015 WL 4153858, * __

14   (9th Cir. July 10, 2015) (citing *Garrison*, 759 F.3d at 1012.)

15

16   Here, however, the ALJ totally ignored Dr. Nicasio's opinions regarding the severity and

17   limiting effects of Plaintiff's depression when he determined that Plaintiff's depression was non-

18   severe and did not impose an additional and significant work-related limitation of function.  The

19   ALJ also rejected entirely the opinions of  Dr. Fitzgerald, an examining psychologist,  and

20   determined the " record contains very little physical treatment."  (A.R. 23.)  Yet  the record, in

21   fact,  contains detailed medical records and treatment notes for Plaintiff dating as far  back as

22   2007,  including  an extensive psychoeducational assessment of Plaintiff by Dr. Fitzgerald  in

23   2011,  (A.R.  192-221.)

24

25   After rejecting the opinions of Drs. Nicasio and Fitzgerald,  the ALJ then found Plaintiff's

26   "credibility reduced by the lack of objective medical evidence to substantiate  her claims." (A.R.

27   23.) But the record indicates, without contradiction that, Plaintiff struggled with anorexia (A.R.

28   231)  and depressive disorder (A.R. 225, 232)  for years  and due to her mental impairment of

11

Mild Retardation  "was identified as a special education kindergarten student at the age of five years old, and . . . [received] special education services since that time."  (A.R.  498.)

On remand, the ALJ must specify the basis for his conclusion regarding  Plaintiff's history of anorexia and depressive disorder, and his "step 2" finding of non-severe, with substantial evidence in the record.  If Plaintiff has an additional impairment that the ALJ finds is severe at "step 2" of the sequential analysis, then the corresponding 12.05C requirement is satisfied.  20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.00(A).

## II.   The ALJ Improperly  Evaluated The Credibility Of Plaintiff's Parents.

The second issue in dispute concerns whether the ALJ erred in discounting the Plaintiff's parents' testimony.  Plaintiff's mother stated that Plaintiff:

> is mildly retarded and quite immature; has an incredibly difficult time following simple instructions; is socially awkward and has no friends; is limited intellectually, emotionally, and socially; suffers from chronic depression; has anorexia-linked physical limitations; is taken advantage of by others; has limited bladder control; and cannot care for her own personal hygiene.

(A.R. 144.)

Plaintiff's father testified that Plaintiff had diminished mental acuity and needed to be told to shower and brush her teeth.  (A.R. 641.)  He testified that Plaintiff is not able to adapt her work habits according to instructions without constant reinforcement.  (*Id.* 642.)  He also testified that Plaintiff cries almost daily (*id.* 643), complains of back pain (*id.* 645), and began eating less, having more problems sleeping, crying more, and generally experiencing deepening depression after the family moved to escape a neighbor who appeared to be taking advantage of Plaintiff's

mental impairments in an attempt to start a sexual relationship (*id.* 646-48).[4]

In evaluating the credibility of a claimant's assertions of functional limitations, the ALJ must consider lay witnesses' reported observations of the claimant.  *Stout*, 454 F.3d at 1053.  "[F]riends and family members in a position to observe a [plaintiff]'s symptoms and daily activities are competent to testify as to [the plaintiff's] conditions."  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4), 416.913 ("[W]e may also use evidence from other sources to show the severity of your impairment(s)," including non-medical sources such as spouses, parents and other care-givers, siblings, other relatives, friends, neighbors, and clergy).  "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness[,]'" *Bruce v. Astrue*, 557 F.3d 1113, 1114 (9th Cir. 2009) (citation omitted), and the reasons must be specific.  *Stout*, 454 F.3d at 1054.

The ALJ proffered four reasons for discounting the lay testimony of Plaintiff's parents:

the parents' descriptions of plaintiff's condition may be inaccurate because their lay observations may not be indicative of plaintiff's maximum capacity; the parents are not disinterested third parties; the parents' opinions contradict evidence in the record; and some of the parents' statements actually attest to plaintiff's range of activities and continued ability to perform basic tasks.

(A.R. 24.)

---

[4]  Plaintiff's father testified that Plaintiff told him that their neighbor, Bob, was "upset because [she doesn't] love him more than a friend" and that Bob had said Plaintiff has "perfect breasts."  (A.R. 646-47.)  Plaintiff's father also testified that, based on Bob's behavior, Plaintiff's psychiatrist advised calling adult protective services, and the Anaheim police recommended that the family move out of the neighborhood.  (*Id.* 647.)  Notably, Plaintiff, on her Adult Function Report, described her social activities as occasionally going to "lunch and a movie" with Bob.  (*Id.* 140.)  She referred to no other friends or social activities.  (*See generally id.*)

1    The ALJ summarily discredited the testimony of Plaintiff's parents because they are not
2    "medical experts." (A.R. 24.)  While the ALJ need not consider "medical *diagnoses*" made by lay
3    witnesses because they are beyond the competence of lay witnesses, "lay witness testimony as
4    to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence,"
5    despite the parents' lack of medical expertise. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.
6    1996) (citing 20 C.F.R. § 404.1513(a)). Moreover, the ALJ failed to give germane reasons for
7    rejecting the lay testimony.

8

9    It is likely that Plaintiff's parents have the unique opportunity to observe Plaintiff in her
10   maximum capacity because they spend more time with her than anyone else, presumably in an
11   environment that is far more suited for her needs and limitations than the workplace. *Cf. Dodrill*,
12   12 F.3d at 919 ("[a]n eyewitness can often tell whether someone is suffering or merely
13   malingering . . . . this is particularly true of witnesses who view the claimant on a daily basis.")
14   Thus, the ALJ erred in citing the parents' lack of medical expertise as grounds for discounting their
15   testimony.

16

17   The ALJ's second reason for discounting the parents' testimony was that they are not
18   disinterested third parties.  "The fact that a lay witness is a family member cannot be a ground
19   for rejecting his or her testimony.  To the contrary, testimony from lay witnesses who see the
20   claimant every day is of particular value." *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996).
21   Therefore, this is not a germane reason for discounting third party testimony.

22

23   The ALJ also discounted the Plaintiff's parents' testimony because the parents' opinions
24   "are not fully consistent with the medical opinions and other evidence discussed herein." (A.R.
25   24.)  This would be a germane reason to reject the testimony, if, rather than giving a summary
26   rejection, the ALJ demonstrated how the parents' testimony contradicts specific medical evidence
27   of record.  The ALJ's findings on credibility must be sufficiently specific to permit the reviewing
28   court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Bunnell v.*

*Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).  Accordingly, the ALJ has not proffered sufficiently detailed reasons explaining how Plaintiff's parents' statements contradict the medical evidence.

Finally, the ALJ discounted the parents' testimony because it "attest[s] to the range of activities and continued ability to perform basic tasks."  (A.R. 24.)  However, the ALJ has not proffered sufficiently detailed reasons demonstrating how Plaintiff's parents' testimony attests to Plaintiff's ability to perform basic tasks.  Moreover, Plaintiff's ability to perform basic tasks in the comfort of her home does not inherently imply she can partake in full-time employment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noting that a claimant is not required to be totally disabled to be eligible for benefits and that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.")  Finally, Plaintiff's mother stated that Plaintiff: "sweeps downstairs, feeds [the] dog, makes her mom's bed, eats lunch, watches TV" (A.R. 126); "[shops for] groceries" (*id.* 130); and enjoys "jogging, swimming, [and] shooting hoops" -- although Plaintiff's mother also clarified that Plaintiff is no longer able to go to the gym (*id.*).

The ALJ has failed to specify which, if any, of these tasks requires more emotional or intellectual capacity than Plaintiff claims to possess.   The parents also testified that Plaintiff: "can't shampoo properly" (A.R. 127); "can't shave legs without major cuts" (*id.*); "can't eat in public" (*id.*); "usually leaves a mess after [bowel movements]" (*id.*); limits her diet to the same meal -- "chicken w/flour tortilla [and] applesauce" -- twice per day (*id.* 128); and cries "on a daily basis" (*id.* 643).  In sum, it is unclear which, if any, of the activities described by Plaintiff's parents clearly "attest to the range of activities and continued ability to perform basic tasks."  (A.R. 24.)  Therefore, the ALJ erred in discounting the parents' testimony by failing to list germane reasons for discounting  this  lay  witness testimony.  On remand, the ALJ should proffer specific reasons, supported by references to the A.R., for discounting the lay witness testimony.

15

### III.   Remand Is Warranted.

Having reviewed the record and the ALJ's conclusions, this Court finds that ALJ's decision is not free of legal error and supported by substantial evidence.  Specifically ALJ failed to properly assess whether Plaintiff satisfied the criteria for Listing 12.05C, failed to properly evaluate the opinions of treating and examining mental health care providers,  and failed to properly evaluate the testimony of Plaintiff's parents.  Nonetheless, the court's review of the record does not clearly require a finding of disability.

Because the Court remands on the grounds described above, the Court declines to reach Plaintiff's contention that the ALJ presented an incomplete hypothetical to the VE.  On remand, the ALJ should: (a) determine whether Plaintiff suffers a mental impairment meeting or equaling Listing 12.05(C), by properly assessing  the medical evidence; (b) make a detailed assessment of the weight given all medical opinions; giving clear and specific reasons for the weight assigned to the opinions; (c) if necessary, make a new RFC assessment; and (d) make a new step four and, if necessary, step five analysis.  Finally, if the ALJ finds that Plaintiff does not satisfy the criteria for Listing 12.05C, the ALJ will need to present a hypothetical to the VE that sets out all of Plaintiff's impairments, including those that are non-severe, and present an accurate and detailed depiction of Plaintiff's limitations that is supported by the medical record. *See Tackett*, 180 F.3d at 1101.

1

2

## **CONCLUSION**

3

       Accordingly, for the reasons stated above, IT IS ORDERED that this case is REMANDED for

4

further   proceedings   consistent   with   this   Memorandum   Opinion   and   Order.

5

6

       IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this

7

Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for defendant.

8

9

       **LET JUDGMENT BE ENTERED ACCORDINGLY**.

10

11

DATED:___September 17, 2015____

12

                                        _____

13

                                        KAREN L. STEVENSON
                                        UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17